IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**KELVIN ARNOLD LEWIS,**

    Petitioner,

v.                                        **CIVIL ACTION NO. 2:18cv206**

**HAROLD W. CLARKE, Director,**
**Virginia Department of Corrections,**

    Respondent.

## REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Kelvin Arnold Lewis's ("Petitioner") *pro se* Petition for a Writ of Habeas Corpus ("the Petition") filed pursuant to 28 U.S.C. § 2254, ECF No. 1, and Respondent Harold W. Clarke's ("Respondent") Motion to Dismiss and Rule 5 Answer and supporting memorandum, ECF Nos. 10-11. The matter was referred for a recommended disposition to the undersigned United States Magistrate Judge ("undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. The undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 10, be **GRANTED,** and the Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is currently serving a thirty-seven year sentence in the Virginia Department of Corrections ("VDOC") imposed on January 15, 2015, by the Circuit Court for King George County, Virginia ("Trial Court"), following an October 16, 2014 jury trial in which Petitioner was convicted of rape, robbery, and forcible sodomy. *Commonwealth v. Lewis*, CR14-283, CR14-285, CR15-338; ECF Nos. 1 at 1 and 11 at 1. Petitioner was represented at trial and on appeal by attorney Venessa R. Jordan ("Defense Counsel"). According to the statement of facts in Petitioner's appeal to the Supreme Court of Virginia, Petitioner's conviction arises out of the following factual background:

> Donna McGee was a 65 year old [sic] woman who lived alone. Tr. 109. She had hired the Petitioner to do projects in her yard several times over the months of March, April, and May, of 2014. Tr. 113-15. Several times she picked him up or drove him home after the work, however, they did not become friends. Tr.116-17.
>
> He did not do a good job, and she did not want him to return. Tr. 115-17.
>
> On May 24, 2014, he arrived at her home uninvited, as she was working in the yard. Tr. 118-20. He asked if she had work for him, she told him "no", and explained why she did not want him to do any more work for her. Tr. 120. He then asked to use her phone, claiming his phone was not working, and that he needed to call for help for a stranded motorist nearby. Tr. 120-23. Ms. McGee entered her home to retrieve her cell phone, and Petitioner followed her in, uninvited. Tr. 121. He first pretended to use the phone, then signaled the driver who had brought him, and was waiting in a car in the driveway, to leave and then asked Ms. McGee, "(W)here's your money". Tr. 123-24.
>
> Ms. McGee tried to exit the house, Petitioner grabbed her, they struggled, he pulled her towards the bedroom, she fought, he pushed her to the floor, and her ribs were injured. Tr. 123-28. He continued to demand money, her credit cards, and her PIN number. Tr. 129-32.
>
> Eventually she threw her purse on the bed, told him to just take it and leave her alone, and he responded, "I can't let you go, you know who I am". Tr. 134-35.
>
> They continued to fight, she fell on the floor, she tried to hold on to stay under the bed, he pulled her out, threw her on the bed, then tied up her wrists and ankles and gagged her, using first stockings and then covering them with tape. Tr. 136-43. He

2

> continued to demand her PIN number as well as repeating that, "...you're going to tell, you know who I am, I can't let you go". Tr. 143-44.
>
> He then raped her, digitally penetrated, and orally sodomized her. Tr. 145-46. Afterwards, he told her to shower to, "...get rid of the DNA". Tr. 148.
>
> Believing she was about to die, Ms. McGee set about reassuring Petitioner that she would forgive him, and God would forgive him too; she tried to convince him that everything would be alright, and she did this because she did not want to die. Tr. 156-59. She later drove him to an ATM to get cash, and took him to where she had dropped him off on previous occasions. Tr. 169-74.
>
> Ms. McGee then returned home, reported the assault to neighbors, who called the police, she reported the assault to police, and was taken to the hospital where a forensic examination was conducted. Tr. 174-77.
>
> Ms. McGee's neighbor and the first officer to respond both testified as to her terrified and afraid demeanor and recent report of the rape. Tr. 255, 260.
>
> The wadded up tape that had bound her was recovered from the bedroom, tested for DNA, and according to a forensic scientist, found to contain a profile consistent with the Petitioner's. Tr. 263-68, 396-412. A swab of Ms. McGee's thighs and external genitalia was likewise found to contain a DNA profile consistent with that of the Petitioner. Tr. 412-18.
>
> Forensic Nurse Faith Shortal examined Ms. McGee at the hospital on the night of the rape. Tr. 328-29.

ECF No. 11, attach. 3 at 5-7.[1] In its decision, the Court of Appeals of Virginia recounted additional pertinent facts related to Petitioner's October 16, 2014 jury trial:

> The victim testified that appellant entered her home, bound her, and sexually assaulted her. Nurse examiner Faith Shortal examined the victim in the hospital during the early morning hours on May 25, 2014. During the trial, Shortal was not qualified as an expert and testified during direct examination about the victim's examination. She identified photographs of the victim she took during the exam and testified regarding her observations of the victim.
>
> During cross-examination, defense counsel sought to ask Shortal about "one particular test that she did apply to [the victim] and the result of that test was negative or no findings. . . ." The Commonwealth objected noting, "it will require her testimony as an expert, and up to this point she has testified strictly as a fact witness about what she has observed." The Commonwealth withdrew its objection

---

[1] Defendant's Brief to the Supreme Court of Virginia provided additional facts about what occurred at trial, but those facts were incomplete as page nine of that brief appears blank. *See* ECF No. 11, attach. 3 at 9.

3

after appellant indicated Shortal would not be asked "to analyze those findings regarding whether it corroborates or not corroborates."

Shortal testified that she administered a toluidine blue dye test to the victim. She described the test, which involved applying a blue dye to the victim's vaginal opening. The dye was then cleaned off with a solution "that will take the dye off unless there's a break in the skin, and then you'll see the remainder of the blue dye which indicate that there's a break in the skin." Shortal testified that she did not notice any dye on the victim that would indicate a break in the skin.

On redirect, the Commonwealth asked the witness: "Ms. Shortal, the lack of any break in this skin that you described where there was a lack of toluidine blue dye uptake, that does not mean that no sexual intercourse or rape occurred, does it?" Appellant objected. The trial court permitted the question, finding appellant "opened this door with regard to what, that, what the significance of it is . . . ." Shortal confirmed that the lack of any break in the skin "[d]oesn't mean the sexual intercourse didn't occur . . . ."

\* \* \*

[A]ppellant questioned Shortal about the blue dye test, including how it is administered and how the results are interpreted. Shortal explained that as a result of the test, she did not observe any injuries to the tested area. The Commonwealth, in order to dispel the impression that a lack of injuries to the area suggested no intercourse occurred, simply asked Shortal whether the fact that the test indicated no skin tears in the area meant that there was no sexual intercourse. The trial court [ ] admitted the evidence after concluding appellant opened the door to the question by introducing the topic of the specific test Shortal administered and the results of that test.

\* \* \*

In its questioning of Shortal, the Commonwealth asked Shortal: "And the defense asked you about possible explanations for the chafing in the perianal, the redness and chafing in the diagram of the perianal area, that's also consistent with [the victim's] depiction of the events, isn't it?" Shortal agreed.

*Id.*, attach. 1 at 1-3.

Because the procedural background of this case is integral to the Court's recommended disposition thereof, the undersigned will now articulate a chronology of Petitioner's appellate efforts and endeavors to obtain state and federal habeas relief.

On January 29, 2015, Petitioner appealed his conviction to the Court of Appeals of Virginia. *Id.*, attach. 2 at 3. In this appeal Defendant raised three issues:

4

> 1) The trial court erred "by allowing the Commonwealth to elicit testimony from the Forensic Nurse Examiner regarding the significance of the toluidine dye test without properly declaring the nurse a qualified expert;"
>
> 2) The trial court erred by allowing the nurse to testify "regarding whether the injuries reported by the complaining witness were consistent with [the victim's] version of the events, without declaring the nurse as an expert;"
>
> 3) The trial court erred by "allowing the Commonwealth to elicit testimony from [the nurse] that the nurse's observations on the complaining witness' perianal area were consistent with the complaining witness' version of events, thereby bolstering the complaining witness' testimony."

*Id.*, attach. 1. On August 3, 2015, the Court of Appeals of Virginia denied Petitioner's appeal *per curiam* and found that the trial court had not abused its discretion in admitting the evidence challenged in claim one and that claims two and three were defaulted under Rule 5A:18 because Petitioner had not raised these arguments before the trial court and Petitioner failed to argue that he met any exception to Rule 5A:18. *Id.*

Petitioner appealed to the Supreme Court of Virginia who refused the petition for appeal on December 29, 2016. *Id.*, attach. 4. Petitioner has not filed a state court habeas petition or any prior federal habeas petitions. ECF No. 1 at 4-5.

Petitioner filed a *pro se* Section 2254 Petition ("the Petition") for federal habeas relief in this Court on April 16, 2018, ECF No. 1, wherein he raised the following grounds[2] for relief:

> Ground One: "Petitioner was denied his const[itutional] right to a fair trial when the trial court allowed the Commonwealth to elicit testimony from the Nurse Examiner [sic] regarding the significance of the toluidine dye test without properly declaring the nurse a qualified expert."
>
> Ground Two: "Petitioner was denied his const[itutional] right to a fair trial when the trial court allowed the Commonwealth to elicit testimony from [the nurse] regarding whether the injuries reported by the complaining witness were consistent with the victim's version of the events, without declaring the nurse as an expert."

---

[2] In his Response in Opposition, Petitioner specifies that he was deprived of his Fourteenth Amendment right to due process and equal protection, and that his rights under the Eighth Amendment were violated. ECF No. 16 at 1-2.

> Ground Three: "Petitioner contends he was denied his const[itutional] right to a fair trial when the trial court allowed the Commonwealth to elicit testimony from [the nurse] that the Nurse's [sic] observations on the complaining witness' personal area were consistent with the complaining witness' version of events, thereby bolstering the complaining witness' testimony."

ECF No. 1 at 6-9; *see also* ECF No. 11 at 2-3.

On June 15, 2018, Petitioner filed a supplement to his Petition and therein provides facts and argument in support of his grounds for relief.[3] ECF No. 5. On August 27, 2018, Respondent filed a Motion to Dismiss, Rule 5 Answer, *Rosboro* Notice, and a Memorandum in Support of the Motion to Dismiss. ECF Nos. 9-12. On September 17, 2018, Petitioner file a Motion for Enlargement of Time, ECF No. 13, which the Court granted on September 25, 2018, directing Petitioner to respond by October 12, 2018, ECF No. 15. On October 11, 2018, Petitioner filed a response in opposition to Respondent's Motion to Dismiss, ECF No. 16. Therefore, the instant Petition and Motion to Dismiss are ripe for recommended disposition.

## II. DISCUSSION

### A. Exhaustion and Procedural Default

Before considering the merits of a federal habeas petition, the preliminary inquiry must be whether Petitioner appropriately exhausted the claims asserted in the Petition, and/or whether Petitioner has procedurally defaulted on his claims such that these claims are simultaneously exhausted and defaulted for purposes of federal habeas review.

*1. Exhaustion*

Section 2254 allows a prisoner held in state custody to challenge his detention on the ground that his custody violates the "Constitution or laws or treaties of the United States." 28

---

[3] In the Petition, Petitioner states "Petitioner intends to rely on the State Petition for Appeal that appellate counsel filed. He is in the process of trying to obtain it from the state courts and appellate counsel. Petitioner's case file was never provided to him, and Petitioner only recently learned that he had days left on his federal 1-year habeas deadline to seek federal habeas relief on his appeal issues." ECF No. 1 at 6.

6

U.S.C. § 2254(a). A state prisoner, however, must exhaust his available state remedies or demonstrate the absence or ineffectiveness of such remedies before petitioning for federal habeas relief to give "state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Importantly, "[t]he burden of proving that a claim is exhausted lies with the habeas petitioner." *Id.* at 618. The exhaustion requirement is satisfied if the prisoner seeks review of his claim in the highest state court with jurisdiction to consider it through either direct appeal or post-conviction proceedings, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999), and the "essential legal theories and factual allegations advanced in the federal court [are] the same as those advanced at least once to the highest state court," *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), *aff'd in Pruett v. Thompson*, 996 F.2d 1560 (4th Cir. 1993). "Thus, a petitioner convicted in Virginia first must have presented the same factual and legal claims raised in his federal habeas corpus application to the Supreme Court of Virginia on direct appeal or in a state habeas corpus petition." *Moody v. Dir., Va. Dep't of Corr.*, 2016 WL 927184, at *3 (E.D. Va. Mar. 3, 2016), *appeal dismissed*, 669 F. App'x 160 (4th Cir. 2016) (citing *Duncan v. Henry*, 513 U.S. 364 (1995)).

   2. *Procedural Default*

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard*, 134 F.3d at 619. As the Fourth Circuit has explained, the procedural default doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* at 619 (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)); *see also Hedrick v. True*, 443 F.3d 342, 359 (4th Cir. 2006) ("A federal claim is deemed procedurally

defaulted where 'a state court has declined to consider the claim's merits on the basis of an adequate and independent state procedural rule.' . . . A federal court cannot review a procedurally defaulted claim unless the prisoner can demonstrate cause and prejudice for the default or a fundamental miscarriage of justice." (quoting *Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998)) (internal citations omitted). As the Supreme Court recently observed, "[t]he procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)).

Additionally, a petitioner seeking federal habeas relief also procedurally defaults his claims when he "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1). When considering a petition for federal habeas corpus, § 2254(d) mandates that a state court's finding of procedural default be presumed correct, provided that the state court relied explicitly on procedural grounds to deny petitioner relief and that the procedural rule relied on is an independent and adequate state ground for denying relief. *See Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (explaining that "an adequate and independent state procedural bar to the entertainment of constitutional claims must have been 'firmly established and regularly followed' by the time as of which it is to be applied") (citing *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)).

Absent a showing of cause for the default and prejudice or a fundamental miscarriage of justice (such as actual innocence), this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989); *see also Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006) (explaining that "a petitioner may nonetheless overcome

procedural default, and have his claims addressed on the merits, by showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of such review") (citing *Coleman*, 501 U.S. at 750; *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996)). The Fourth Circuit has held that "[t]o establish cause, a petitioner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Hedrick*, 443 F.3d at 366 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)); *see also Davila*, 137 S. Ct. at 2065 ("A factor is external to the defense if it 'cannot fairly be attributed to' the prisoner.") (quoting *Coleman*, 501 U.S. at 753). "This requires a demonstration that 'the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding.'" *Hedrick*, 443 F.3d at 366 (quoting *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999)). "Importantly, a court need not consider the issue of prejudice in the absence of cause." *Booker v. Clarke*, 2016 WL 4718951, at *5 (E.D. Va. Sept. 8, 2016), *appeal dismissed*, 678 F. App'x 152 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 234, 199 L. Ed. 2d 152 (2017), *reh'g denied*, 138 S. Ct. 538, 199 L. Ed. 2d 414 (2017) (citing *Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996)).

*3. Petitioner's Grounds for Relief are Both Exhausted and Procedurally Defaulted*

Petitioner's instant claims are similar to those previously raised before the Court of Appeals of Virginia. *See* ECF No. 1, 11, attach. 1. The only distinction between those claims raised in Petitioner's direct appeal and those raised in the Petition is that Petitioner now claims the trial court's errors violated his constitutional right to a fair trial. *See* ECF No. 5 (noting that the only distinction between his claims in his direct appeal and in his Petition Petitioner now "claims, as noted on the § 2254 form, that his constitutional rights were violated in the state trial court errors."). Petitioner is faced with two procedural problems; first, Petitioner has not previously filed a state

9

habeas action, and second, Petitioner did not claim that his constitutional rights were violated on direct appeal to the Court of Appeals of Virginia or the Supreme Court of Virginia. ECF No. 11 at 3.

As stated *supra*, "a petitioner convicted in Virginia first must have presented the same factual and legal claims raised in his federal habeas corpus application to the Supreme Court of Virginia on direct appeal or in a state habeas corpus petition." *Moody*, 2016 WL 927184 at *3 (citing *Duncan*, 513 U.S. 364). While Petitioner did make a direct challenge to the Court of Appeals of Virginia and the Supreme Court of Virginia on very similar grounds, the grounds in the Petition are not identical to those previously claimed. Petitioner is now, for the first time, raising a constitutional violation. Because Petitioner has not sought relief on the constitutional violations now alleged, Petitioner has failed to exhaust each of his specific claims. Also stated *supra*, a state prisoner must exhaust his available state remedies or demonstrate the absence or ineffectiveness of such remedies before petitioning for federal habeas relief to give "state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing." *Breard*, 134 F.3d at 619. By not seeking habeas relief in state court before filing the instant Petition, Petitioner has failed to exhaust his available state court remedies more generally. Thus, Petitioner has failed to exhaust his claims.

However, "a claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker v. Corcoran,* 220 F.3d 276, 288 (4th Cir. 2000). If Petitioner were to raise these issues in a new state habeas petition to exhaust his state post-conviction remedies, he would be procedurally barred because the time for doing so expired on December 29, 2017, one year from the final disposition of the direct appeal in state

court. *See* ECF No. 11, attach. 4; Va. Code. § 8.01-654(A)(2). This situation is presented as simultaneous exhaustion and procedural default, which "occurs when a habeas petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present her claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1). Thus, if Petitioner now attempted to raise these claims in state court, they would be procedurally barred as untimely under Virginia Code § 8.01-654(A)(2), which provides a one-year statute of limitations after the cause of action accrues. Because "the procedural bar that gives rise to exhaustion is an independent and adequate state ground, [all] of [Petitioner's] claims raised in the instant petition must be treated as simultaneously exhausted and procedurally barred from federal habeas review." *Sparrow*, 439 F. Supp. 2d at 588; *Baker*, 220 F.3d at 288 ("[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim."); *Breard*, 134 F.3d at 619 ("A distinct but related limit on the scope of federal *habeas* review is the doctrine of procedural default.").

Petitioner may overcome the procedural default and have his claims addressed on the merits if he "is able to demonstrate cause and prejudice for the default or demonstrate that failure to review the claim[] will result in a fundamental miscarriage of justice." *Edwards v. Johnson*, 2010 WL 5825427, at *3 (E.D. Va. Dec. 15, 2010) (citing *Coleman*, 501 U.S. at 750; *Savino*, 82 F.3d at 602). However, Petitioner puts forth no reason why he failed to raise his constitutional claims on direct appeal or file a state court habeas petition seeking relief on the instant claims nor does he argue that a failure to review his claims will result in a fundamental miscarriage of justice.

Thus, the undersigned **FINDS** that Petitioner's claims are both exhausted and procedurally defaulted without any cause stated for the default or demonstration that a fundamental miscarriage

11

of justice will result. Accordingly, the undersigned **RECOMMENDS** that the Petition, ECF No. 1, be **DISMISSED**.

### III. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 10, be **GRANTED**, and Petitioner's Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

### V. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner and to counsel for Respondent.

/s/
Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
November 28, 2018